UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.

SAHIL NARANG

Criminal Case No _1:20CR111JJM-LDA_

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and Defendant Sahil Narang ("Defendant" or "Narang") have reached the following agreement:

1.     Defendant's Obligations.

       a.     Defendant will waive presentation of this matter to a grand jury and consent to the filing of an eleven-count Information that charges one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and ten counts of wire fraud, in violation of 18 U.S.C. § 1343.   Defendant agrees that Defendant will plead guilty to said Information.   Defendant further agrees that the time between the filing of this plea agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act, 18 U.S.C. § 3161.

       b.     Defendant further agrees, upon execution of this agreement, to cooperate with the United States as follows:

              (i)     Defendant will meet with government representatives as often as necessary and provide complete and truthful information to them.

              (ii)     Defendant will appear and testify completely and truthfully in any and all legal proceedings, including, but not limited to, grand jury, pre-trial, trial, re-trial, and sentencing proceedings.

              (iii)     Defendant understands that any and all statements, information, and testimony Defendant provides must at all times be complete and

1

Case 1:20-cr-00111-JJM-LDA   Document 37-2   Filed 12/02/20   Page 29 of 9 PageID #: 175

truthful.   If, at any time, Defendant wilfully provides any false statement, information, or testimony, Defendant shall be subject to prosecution for doing so, including but not limited to prosecution for making a false statement, obstruction of justice, and perjury.

c.      Defendant will promptly submit a completed Department of Justice Financial Statement to the U.S. Attorney's Office, in a form that the U.S. Attorney's Office provides and as it directs.   Defendant agrees that his/her financial statement and disclosures will be complete, accurate, and truthful.   Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him/her in order to evaluate Defendant's ability to satisfy any financial obligation that may be imposed by the Court.

2.      Government's Obligations.   In exchange for Defendant's pleas of guilty:

a.      The government will recommend that the Court impose a term of imprisonment within the range of sentences for the offense level determined by the Court under the United States Sentencing Guidelines (the U.S.S.G. or "guidelines"), but not including probation or a "split-sentence," even if permitted under the guidelines.

b.      For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

c.      As of the date of this agreement, Defendant has timely notified authorities of an intention to enter a plea of guilty.   If the offense level is 16 or greater and Defendant enters a plea of guilty pursuant to this agreement, the government will move the sentencing Court for an additional decrease of one level, pursuant to U.S.S.G. § 3E1.1(b), unless Defendant indicates an intention not to enter a plea of guilty, thereby requiring the government to prepare for trial.

2

d.   The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

3.   Defendant understands that the guidelines are not binding on the Court, and that, although the Court must consult the guidelines in fashioning any sentence in this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

4.   The United States and defendant stipulate and agree to the following facts under the guidelines:

a.   From a date unknown, but beginning at least as far back as August 30, 2018, and continuing to May 1, 2019, Defendant has generated for himself and others fraud proceeds from knowingly furthering Tech Fraud and Refund Fraud schemes, fraud schemes that are described in paragraphs 5 and 6 of the Information.

b.   Since at least as early as August 30 and continuing to May 1, 2019, Narang in concert with others engaged in Tech Fraud, and his activities included (1) directing pop-up ads that were in furtherance of Tech Fraud to the public and having victim calls directed to a call center that he operated in Gurgaon, India or to other call centers and (2) obtaining victim calls from others who had directed pop-up ads that were in furtherance of Tech Fraud to the public and having victim calls directed to a call center that he operated in Gurgaon, India or to other call centers.

c.   Where Defendant routed calls to his own call center, he shared the proceeds of the Tech Fraud with those who worked for him.   At various periods of time between August 30, 2018 and May 1, 2019, Defendant managed, lead, and organized the activities of five or more call center operators engaged Tech Fraud at his call center. When Defendant routed calls to other call centers, he collected a per call fee.

3

2018   SN, MS, GW   12/11/2020

   d.      Between August 30, ~~2019~~ and May 1, 2019, Defendant routed 19,363 victim calls to persons engaged in the execution of Tech Fraud on those victims.   Many of those calls, though routed with the intension of defrauding the callers, lasted only a short time, with the caller presumably hanging up shortly after making contact with a call center operator.   A total, however, of 7,524 calls were over 20 minutes in duration. The parties agree that those engaged in Tech Fraud, including Defendant, typically sought to obtain between $200 and $400 per victim call.   The parties stipulate and agree that the intended loss associated with the Tech Fraud calls that Defendant routed was between $1.5 million and $3 million.

   e.      Since at least as early as August 31, 2018 and continuing to May 1, 2019, Defendant in concert with others engaged in Refund Fraud, and his activities included (1) obtaining the phone numbers of victims who had previously fallen prey to Tech Fraud and selling lists of those numbers to persons interested in exploiting those victims for more money through Refund Fraud, (2) providing to call center managers bank accounts to which Refund Fraud proceeds from victims could be routed and then transferred to India for distribution amongst those involved in the execution of Refund Fraud on those victims.

   f.      When Defendant sold victim phone number to Refund Fraudsters, he collected a per call fee.   When Defendant provided bank accounts for use by Refund Fraudsters, he collected a portion of the money routed through the accounts, usually fifty to sixty percent.

   g.      The intended and actual loss associated with the ten victims of Defendant's Refund Fraud –SM, CJ, RP, WM, KC, LB, VL, MS, RS, and ED – was, the parties agree, $560,900.   Each of these victims was over the age of 65 and some suffered from dementia.

4

h.     The parties agree and stipulate that based on the cumulative actual and intended losses described above the total fraud loss amount is between $2 million and just under $3.5 million, triggering a 16-level increase under Guidelines § 2B1.1(b)(1)(I).

i.     Defendant knew or suspected that primarily elderly individuals, who were likely to be over the age of 65, were being targeted by his Tech Fraud and Refund Fraud schemes, and he knew this because of how the schemes were structured and effectuated.

j.     The parties agree and stipulate that there were 10 or more victims, triggering a 2-level increase under Guidelines § 2B1.1(b)(2)(A).

k.     The parties agree and stipulate that a substantial part of the fraudulent scheme was committed in India and that Defendant's offenses involved sophisticated means and that Defendant intentionally engaged in or caused the conduct constituting the sophisticated means, triggering a 2-level increase under Guidelines § 2B1.1(b)(10).

l.     The parties agree and stipulate that Defendant was an organizer and leader of a criminal activity that involved five or more participants or was otherwise extensive, triggering a 4-level increase under Guidelines § 3B1.1(a).

5.     Except as expressly provided in the preceding paragraph, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

6.     The maximum statutory penalties for the offenses to which Defendant is pleading are:

(i)     Count One:   20 years imprisonment; a fine of $ 250,000; a term of supervised release of 3 years; a mandatory special assessment of $100;

5

Case 1:20-cr-00111-JJM-LDA   Document 37   Filed 12/02/20   Page 6 of 9 PageID #: 152

(ii)    Each Count from Two to Eleven:   20 years imprisonment; a fine of $250,000; a term of supervised release of 3 years; a mandatory special assessment of $100. If imposed consecutively, the maximum penalties for all offenses to which Defendant is pleading guilty are 220 years imprisonment; a fine of $ 2,750,000; and a term of supervised release of 33 years.   The mandatory special assessment totals $ 1100.

7.    Defendant agrees that, after Defendant and Defendant's counsel sign this plea agreement, counsel will return it to the United States Attorney's Office along with a money order or certified check, payable to the Clerk, United States District Court, in payment of the special assessments.   Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

8.    Defendant is advised and understands that:

a.    The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

b.    Defendant has the right to plead not guilty, or having already so pleaded, to persist in that plea;

c.    Defendant has the right to a jury trial;

d.    Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

e.    Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

f.    Defendant waives these trial rights if the Court accepts a plea of guilty.

g.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.   Under federal

6

law, a broad range of crimes are removable or deportable offenses. Likewise, if defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization as well as removal and deportation. Removal, deportation, denaturalization, and other immigration consequences are the subject of separate proceedings, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his removal or deportation from the United States or his denaturalization.

9. The government reserves its full right of allocution, including the right to present any information to the Court for its consideration in fashioning an appropriate sentence, the right to correct misstatements, misrepresentations, or omissions by Defendant, and to answer any questions asked by the Court.

10. Except for paragraph 2 and 4 above, the parties have made no agreement concerning the application of the guidelines in this case.

11. Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed. The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations. The Court is free to impose any sentence it deems appropriate up to and including the statutory maximum. Defendant also understands that even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty.

12. Defendant hereby waives Defendant's right to appeal the convictions and sentences imposed by the Court, if the sentences imposed by the Court are within or below the sentencing guideline range determined by the Court. This agreement does

7

not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

13.     This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses.   Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate.   If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

14.     This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

15.     This agreement constitutes the entire agreement between the parties.   No other promises or inducements have been made concerning the plea in this case. Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement.   Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

16.     Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's knowledge and belief, Defendant understands the agreement.

17. Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.

For Sahil Narang by /s/ George J. West      November 20, 2020

**Sahil Narang**      Date
Defendant

/s/ George J. West      November 20, 2020

**George J. West**      Date
Counsel for Defendant

     12/2/2020

**Milind Shah**      Date
Assistant U.S. Attorney

     12/2/2020

**Sandra R. Hebert**      Date
Assistant U.S. Attorney
Chief, Criminal Division